WILLIAM F. LUTZKEN, Respondent, *v.* CITY OF ROCHESTER, Appellant.

Fourth Department, April 8, 1959.

*Honora A. Miller, Corporation Counsel (Charles A. Cavallaro* of counsel), for appellant.

*MacFarlane, Harris, Martin, Kendall & Dutcher (James W. Richards* of counsel), for respondent.

GOLDMAN, J. Plaintiff recovered judgment against the defendant City of Rochester on a *quantum meruit* basis for services rendered in the removal of four tree stumps. This claim was set forth in the second cause of action of plaintiff's complaint, the first cause of action alleging an express contract having been properly dismissed by reason of a complete failure of proof. Although the record is not clear or conclusive as to any promise made by the city to pay plaintiff for removing the stumps (the city contending that it was a pure demonstration in the hope of securing future business), the Trial Judge may have been justified in concluding that plaintiff was entitled to believe that if he did the work satisfactorily, and this is not denied, he would be paid the reasonable value of his services.

A municipality, like an individual, if it accepts the benefits of one's services should be required to pay for them, if the authority to make the contract existed. Fair dealing should require a governmental body, on the theory of implied or quasi contract, to pay the reasonable value of property received or services rendered if it legally can be held responsible therefor. The obligation to do justice should fall equally on all persons whether natural or artificial in character.

Public policy, however, dictates that in the interest of protecting all of the taxpayers it is imperative that certain formalities be established in the form of ordinances and statutes to prevent careless and loose dealing by persons charged with the responsibility of purchasing services or commodities for a municipal entity. No municipality should have the power or right to waive or disregard requirements which have been properly determined to be in the interest of the whole, as opposed to the equitable considerations which one might be inclined to extend to one who has, even though in good faith, failed to follow the prescribed rules. The doctrine of implied contract cannot be invoked to do rough justice and fasten liability where the legal requirements specifically prohibit.

The theory upon which the City Court granted the plaintiff judgment is set forth in paragraph Seventh of the second cause of action, which reads as follows: "SEVENTH: That the said work, labor and services were so performed by the plaintiff, without any express contract or previous request from the said defendant, but at all times when the said work, labor and services were being performed, the defendant knew that plaintiff was performing the same and expected to be paid therefor, and acquiesced in the work being done, and thereafter accepted the same and received the benefits of the work so done by plaintiff." This allegation attempts to spell out an implied contract to compensate plaintiff for the benefits which the city received, but, as set forth in the answer of the city, plaintiff had the further burden of proving that the municipal employees with whom he dealt had authority under the charter, ordinances and statutes to create the liability for which the city would be required to respond in payment. To determine this question, we must turn to the City Charter which regulates purchasing. Section 124 * provides that the purchasing agent cannot issue

---

* Numbering system here used refers to Rochester City Charter as renumbered and published as of January 1, 1958 by Rochester Corporation Counsel's office in the Rochester Municipal Code pursuant to section 700 of the Rochester City Charter as published in the Rochester Municipal Code.— [REP.

a contract without certification by the Budget Director that the contract is authorized and that sufficient funds are available. (§ 125; Local Laws, 1925, No. 4 of the City of Rochester, as amd. by Local Laws, 1954, No. 4.) Section 132 * prescribes that claims against the city cannot be paid unless evidenced by a claim voucher approved by the Budget Director or department head for which the obligation was incurred. (§ 210; Local Laws, 1925, No. 4 of City of Rochester as amd. by Local Laws, 1948, No. 2.) Section 133 * requires that contracts shall not be entered into or any expenditure of money made unless the Budget Director makes the certification required by section 124 *. (§ 212; Local Law No. 4 of 1925 as amd. by Local Law No. 2 of 1948.) All contracts and obligations entered into contrary to the provisions of the preceding sections are declared void by section 135 *. (§ 214; Local Law No. 4 of 1925, as amd. by L. 1943, ch. 710.) Furthermore, section 152 *, dealing with purchasing procedure, provides that all purchases of materials, supplies and work shall be made by the purchasing agent supervised by the Comptroller in accordance with the ordinances of the council. (§ 197; Local Law No. 4 of 1925, as amd. by Local Law No. 3 of 1941.)

Plaintiff submits that notwithstanding the charter requirements, and particularly section 152 * (cited in briefs as § 283), the funds with which to compensate him were available under charter section 163 * (cited in respondent's brief as § 220). This section deals solely with '' emergency funds '' and provides in part that '' The council may create in any department * * * an emergency fund not exceeding the sum of one thousand dollars which sum may be expended in such manner as the council may prescribe. Reimbursement claim vouchers must be presented to the comptroller for all moneys expended from such funds ''. (§ 219; Local Law No. 4 of 1925.) The plaintiff contends that under this section the park department had funds available with which to pay him for the services he rendered. Nowhere in the charter or ordinances do we find a definition of '' emergency ''. We must, therefore, resort to the general understanding of the word. Webster (New International Dictionary, 2d ed.) defines it as '' An unforeseen combination of circumstances which calls for immediate action ''. Synonyms are given as '' crisis, pinch, strait, necessity ''. Surely it cannot be argued successfully that the need to remove these tree stumps was in any respect an '' emergency '' and we must, therefore, conclude that the emergency provisions of the charter are not applicable and cannot be used as the basis for recovery.

It is established law in this State that where there is a lack of authority on the part of agents of a municipal corporation to create a liability, except by compliance with well-established regulations, no liability can result unless the prescribed procedure is complied with and followed. Although other jurisdictions may recognize a claim upon a *quantum meruit* or *quantum valebant,* even though there were irregularities or defects in the method of contracting for the services, it is clear that such is not the law in this State. In at least one jurisdiction, Missouri, a statute has been enacted to prevent governmental agencies from profiting by the services rendered even though there has been a failure to follow the prescribed procedure. Desirable as this may be, we do not have such a statute in New York. *Seif* v. *City of Long Beach* (286 N. Y. 382) controls the situation at bar and requires that plaintiff be denied the recovery he secured in City Court. It is difficult to imagine a fact situation in which the plaintiff had a greater equitable right to be compensated by the city than in *Seif* v. *City of Long Beach* (*supra*). There, the plaintiff, an attorney, was retained by the Mayor with the knowledge of four fifths of the council and performed services in a skillful and competent manner, but was denied recovery by a unanimous court. At pages 387–388 the Court of Appeals lays down the principle which governs the appeal at bar: '' Mere acceptance of benefits by the city under a contract made without authority does not estop a municipal corporation from challenging the validity of the contract and from denying liability for materials furnished or services rendered under a contract not made or ratified by a board or officer acting under authority conferred by law and in the manner prescribed by law. (McQuillan [*sic*], Municipal Corporations, § 1358.) Where the Legislature provides that valid contracts may be made only by specified officers or boards and in specified manner, no implied contract to pay for benefits furnished by a person under an agreement which is invalid because it fails to comply with statutory restrictions and inhibitions can create an obligation or liability of the city. In similar case this court has given emphatic warning that equitable powers of the courts may not be invoked to sanction disregard of statutory safeguards and restrictions. ' It is plain, that if the restriction put upon municipalities by the Legislature, for the purpose of reducing and limiting the incurring of debt and the expenditure of public money, may be removed, upon the doctrine now contended for, there is no legislative remedy for the evils of municipal government, which of late have excited so much attention and painful

foreboding.' (*McDonald* v. *Mayor*, 68 N. Y. 23, 28.) '' (Also, see, *Smith* v. *City of Newburgh*, 77 N. Y. 130, 136; *Cassella* v. *City of Schenectady*, 281 App. Div. 428, 432; *Brown* v. *Mount Vernon Housing Auth.*, 279 App. Div. 794.)

In summary, we believe the closing sentence in *Seif* v. *City of Long Beach* (*supra*, p. 389) completely covers our situation. '' We do not consider whether a moral obligation may exist, which should have been recognized by the Council. No legal obligation arose.''

The order and judgment should be reversed and the complaint dismissed.

All concur. Present — McCurn, P. J., Williams, Bastow, Goldman and Halpern, JJ.

Order of Monroe County Court and judgment of Rochester City Court reversed on the law and facts, without costs of this appeal to either party, and complaint dismissed, without costs.