GENESCO ENTERTAINMENT, A DIVISION OF LYMUTT INDUSTRIES, INC., Plaintiff,

v.

Edward KOCH, the City of New York, the Department of Parks and Recreation of the City of New York, New York National League Baseball Club, and Ticketron, a Division of Control Data Corporation, Defendants.

No. 83 Civ. 1977.

United States District Court,
S.D. New York.

Aug. 17, 1984.

Giamboi, Reiss & Squitieri, New York City, for plaintiff; Sigmund Geronimo, of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel, New York City, for Municipal defendants; Christopher R. Gette, Asst. Corp. Counsel, New York City, of counsel.

Conway, Farrell, Maloney, Stern, O'Conor & Duignan, New York City, for defendant Ticketron; Michael E. Curan, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, a concert promoter, sought to lease Shea Stadium, New York City, for the production of a country and western music concert on August 22, 1981. After extensive negotiations, the relationship between the City negotiators and plaintiff's representatives broke down a few days before August 22 and the concert was cancelled. Thereupon, plaintiff commenced this action seeking damages for the cancellation, asserting various claims against combinations of defendants, including Edward R. Koch, the Mayor of the City of New York ("Mayor"), the City of New York ("City"), the Department of Parks and Recreation of the City of New York ("Department"), and Ticketron, a division of Control Data Corporation ("Ticketron").

## SUMMARY OF THE CLAIMS

Plaintiff's first cause of action against the City and the Department (collectively "municipal defendants") and the Mayor alleges that the plaintiff entered into an oral contract with the municipal defendants whereby plaintiff would pay the City and the Department $40,000 and the New York National League Baseball Club ("the Mets")[1] $35,000 for the use of Shea Stadium for a one-day concert on August 22, 1981; that this oral contract was amended twice, first on August 18, 1981, when the price was increased to an additional $35,000 for the City and an additional $40,000 for the Mets, and again on August 19, when the municipal defendants stated that the aforesaid $75,000 would not suffice and that $121,000 was required. On August 20 the municipal defendants refused to accept the amended and agreed upon $121,000, demanding instead $131,000 for the City and the Department and an additional $50,000 for the Mets; that by their refusal to accept $121,000 and instead demanding the $131,000 for the City and the Department, the defendants breached an oral agreement for the use of Shea Stadium, causing damages of $10,500,000.

The second cause of action names only the Mayor as a defendant and alleges that the demands for the increased fees referred to in the first cause of action were made with his consent, and that he ratified and approved the acts constituting the alleged breach of the oral agreement.

The third cause of action alleges that the Mayor, the municipal defendants and Ticketron committed deceptive acts and trade practices in violation of the New York General Business Law, section 349.

The fourth claim charges that the Mayor and the municipal defendants, through their conduct and representations, sought to convey to the plaintiff the impression that a contract was in effect for plaintiff's use of Shea Stadium on August 22, 1981; that plaintiff relied on such conduct and representations to its detriment; and that thereby an "estoppel in favor of the plaintiff" was created.

Plaintiff's fifth claim alleges that the municipal defendants acted under color of state law in revoking the contract between plaintiff and the defendants, thereby depriving plaintiff of property without due process of law in violation of 42 U.S.C., section 1983.

Koch, the City and the Department move for summary judgment on each of the causes of action alleged against them. The motion is based upon affidavits of various participants in the negotiations, extensive pre-trial discovery of such persons and a statement by the movants pursuant to Local Rule 3(g). Initially it is noted that the plaintiff has failed to controvert the statements in the defendants' 3(g) notice as required by the Rule.

In considering a motion under Rule 56, this Court "cannot *try* issues of fact but can only determine whether there *are* issues of fact to be tried."[2] Our Court of Appeals has cautioned that Rule 56 should be applied "rigidly" and has recognized that it has at times been applied with "some timidity" to avoid substituting trial by affidavit for trial by jury.[3] However, when properly applied, Rule 56 provides a "valuable tool for piercing conclusory allegations and disposing of unsupportable claims prior to trial."[4] The moving party bears the burden of establishing the absence of any material issue of fact.[5] The Court must resolve "all ambiguities and

---

1. Originally, plaintiff asserted two separate claims against the New York National League Baseball Park Club ("the Mets"), the lessee of Shea Stadium, but these have been discontinued.

2. *Katz v. The Goodyear Tire & Rubber Co.,* 737 F.2d 238 at 244 (2d Cir.1984) (*quoting Empire Electronics Co. v. United States,* 311 F.2d 175, 179 (2d Cir.1962 (emphasis in original).

3. *Applegate v. Top Assoc.,* 425 F.2d 92, 96 (2d Cir.1970).

4. *Id.*

5. *Katz v. The Goodyear Tire & Rubber Co.,* 737 F.2d 238 at 244 (2d Cir.1984); *Schering Corp. v. Home Insurance Co.,* 712 F.2d 4, 9 (2d Cir.1983).

draw all reasonable inferences in favor of the party against whom summary judgment is sought."[6] Nevertheless, to defeat a motion for summary judgment, the opposing party may not rest on conclusory allegations or denials, but must set forth, by competent evidence, specific facts showing that there is a genuine issue of material fact.[7] Applying these principles to the present case, the Court is persuaded that the City, the Department and the Mayor have borne their burden with respect to all causes of action and are entitled to summary judgment.

## BACKGROUND

Plaintiff's allegations describe a series of negotiations for the use of Shea Stadium carried on by Genesco principals, Anthony Scotti and Gene Richards, and Wendell Levister, Deputy Commissioner of the Department of Parks and Recreation. Also present or participating in the negotiations were Rudolph Taylor, General Counsel of the Department of Parks and Recreation, and Diana Ortiz, Deputy General Counsel for the Department of Parks and Recreation. Plaintiff claims that "sometime prior to the 8th day of August, 1981,"[8] plaintiff entered into an oral contract with the City and the Department for the presentation of the concert at Shea Stadium on August 22. While Genesco's principals have not consistently described their understanding of each of the terms of the oral contract,[9] they most consistently set a total fee for the use of Shea Stadium at $75,000. Plaintiff asserts that two or three days prior to the actual date of the concert, the City and the Department breached the oral contract

by demanding and then failing to accept a $121,000 fee, by subsequently demanding a $181,000 fee, and finally by publicly announcing the cancellation of the concert. Plaintiff does not dispute the fact that no written agreement was ever consummated, although it claims that City officers represented to it that a duly executed written contract would be forthcoming as a matter of course.

## DISCUSSION

### Breach of Contract Claim

The municipal defendants first argue that they are entitled to summary judgment on the breach of contract claim as a matter of law because the alleged oral contract is invalid and unenforceable, since it fails to conform to the statutory prerequisites required of contracts for the lease of Shea Stadium. The movants here emphasize that the alleged contract was not in writing; that it had never been agreed to by the authorized officer of the Department; and that it had never been approved as to form by the City Corporation Counsel. Second, defendants argue that the plaintiff has admitted that the parties did not intend to be bound until the execution of a written contract, pointing to portions of the deposition of Gene Richards, one of the partners of Genesco.[10] The Court does not reach the defendants' second argument because the first is dispositive of plaintiff's breach of contract claim.

 When acting in its corporate capacity, a municipality is held as accountable for its obligations as are individuals and

6. *Schering Corp. v. Home Insurance Co.,* 712 F.2d 4, 9 (2d Cir.1983).

7. *Wyler v. United States,* 725 F.2d 156 (2d Cir. 1983).

8. Plaintiff's Amended Complaint at 3.

9. Gene Richards, one of Genesco's principals, asserts in his affidavit that the terms originally agreed upon were the following: $35,000 minimum fee to the City; a $100,000 letter of credit to be deposited with the City for security; and a $10,000,000 insurance policy. Richards claims these terms were then modified so that the

$100,000 letter of credit requirement was to be fulfilled by ticket proceeds. Affidavit of Gene Richards in Opposition to Defendants' Motion for Summary Judgment at 5–6. At deposition, Richards and his co-principal, Anthony Scotti, convey the impression that the original understanding contemplated a total fee of $75,000 without making reference to the $100,000 letter of credit. Reply Affidavit of Christopher Gette, Exhibits A and C.

10. *See* Gette affidavit, Ex. B, at 20, 25, 31–2.

corporations in the conduct of business.[11] Unlike individuals and private corporations, however, a municipality's power to contract is statutorily restricted for the benefit of the public.[12] Statutory restrictions on a municipal corporation's power to contract protect the public from the corrupt or ill-considered actions of municipal officials.[13] To allow recovery under a contract which contravenes such restrictions gives vitality to an illegal act and grants the municipality power which it does not possess "to waive or disregard requirements which have been properly determined to be in the interest of the whole." [14]

■ Hence, while a municipal corporation must honor its authorized commitments, it is not bound to contracts entered into by employees outside their authority.[15]

It is established law in [New York] that where there is a lack of authority on the part of agents of a municipal corporation to create a liability, except by compliance with well-established regulations, no liability can result unless the prescribed procedure is complied with and followed.[16]

■ None of the parties with whom plaintiff claims to have negotiated, Deputy Commissioner Levister,[17] General Counsel Taylor, or Deputy General Counsel Ortiz, were statutorily authorized to enter into an agreement for the lease of Shea Stadium. Gordon Davis, the Commissioner of the Parks and Recreation Department, is the only city official authorized under the Administrative Code to enter into such a contract. The New York City Charter grants the Commissioner power to enter into contracts for recreational purposes subject to the approval of the Mayor.[18] With respect to the use of Shea Stadium, the Commissioner, alone, may enter into a binding contract. Section 532–15.0(d) of the New York Administrative Code provides for the rental of Shea Stadium.[19] The provision states:

Notwithstanding the foregoing provisions ... or the provisions of any other law, general, special or local, the *commissioner*, acting in behalf of the city, is hereby authorized and empowered, ... to enter into contracts, leases or rental agreements ... upon such terms and conditions and for such consideration as may be agreed upon *by the commissioner* and such person or persons ... whereby such person or persons are granted the right to use, occupy or carry on activ-

---

**11.** "Where a municipal corporation acts in its proprietary capacity, as here, it is subject to the same standards and restraints as are applicable to a private individual or a corporation in the conduct of similar business." *Van Curler Develop. Corp. v. City of Schenectady,* 59 Misc.2d 621, 626, 300 N.Y.S.2d 765, 773 (1969); 27 N.Y. Jur.2d § 1210 (1983).

**12.** *Scarborough Properties Corp. v. Briarcliff Manor,* 278 N.Y. 370, 16 N.E.2d 369 (1938); *Lutzken v. City of Rochester,* 7 A.D.2d 498, 499, 184 N.Y.S.2d 483, 486 (1959).

**13.** *Evans v. City of Johnstown,* 96 Misc.2d 755, 767, 410 N.Y.S.2d 199, 205, 27 N.Y.Jur.2d § 1213 (1983).

**14.** *Lutzken v. City of Rochester,* 7 A.D.2d 498, 499, 184 N.Y.S.2d 483, 486 (4th Dep't 1959).

**15.** *Seif v. City of Long Beach,* 286 N.Y. 382, 36 N.E.2d 630 (1941); *McDonald v. Mayor,* 68 N.Y. 23, 28 (1876); *Lutzken v. City of Rochester,* 7 A.D.2d 498, 184 N.Y.S.2d 483 (4th Dep't 1959); *Oakhill Contracting Co. v. City of New York,* 262

A.D. 530, 30 N.Y.S.2d 567 (1st Dep't 1941); *Cupid Diaper Service Corp. v. New York City Health & Hospitals Corp.,* 86 Misc.2d 116, 381 N.Y.S.2d 996 (1976).

**16.** *Lutzken v. City of Rochester,* 7 A.D.2d 498, 501, 184 N.Y.S.2d 483, 487 (4th Dep't 1959).

**17.** Plaintiff, by its failure to respond to defendants' statement pursuant to Local Rule 3(g), is deemed to have admitted the allegation contained in defendant's statement that Deputy Commissioner Levister was not authorized to enter into any agreement with plaintiff for the use of Shea Stadium. Local Rule 3(g); *Foreman v. Ambach,* 525 F.Supp. 722, 724 (S.D.N.Y. 1981).

**18.** 1 New York City Charter and Administrative Code § 533(b)(4) (1978 & Supp. 1983–84); *Miller v. City of New York,* 15 N.Y.2d 34, 203 N.E.2d 478, 255 N.Y.S.2d 78 (1964).

**19.** 3 *id.* § 532–15.0(d) at 392–93 (1978). This section is entitled, "Renting of Stadium in Flushing Meadow Park."

ities in, the whole or part of such stadium.... [20]

While the Commissioner may delegate his authority, that delegation is only valid if a written instrument is filed with the Department.[21]

Plaintiff does not dispute that the Commissioner never negotiated with the plaintiff nor signed a written contract. Plaintiff also does not dispute that Commissioner Davis never delegated, in writing, authority to Deputy Commissioner Levister to contract for the use of Shea Stadium.

■ Plaintiff claims, however, that it reasonably relied on the representations of Deputy Commissioner Levister, General Counsel Taylor, and Deputy General Counsel Ortiz that a duly executed contract was forthcoming. Construed broadly, this contention includes a claim that the negotiating parties, although without actual authority, possessed apparent authority to enter into a contract for the lease of Shea Stadium. However, the New York courts do not generally follow the doctrine of apparent authority in cases involving municipal defendants.[22] New York law places the burden of determining the scope of a municipal officer's authority upon those who deal with municipal government.[23] Unlike a typical agency relationship, the authority of municipal officers is a matter of record to which the public has ready access.[24] Moreover, placing the public on notice of the limitation of the authority of municipal employees furthers the purpose of the statutory restrictions to protect the public against the irresponsible or corrupt actions of municipal employees.[25]

■ Plaintiff's allegations also suggest a claim that the Commissioner's signature was but a formality that had been assured by Deputy Commissioner Levister, General Counsel Taylor, and Deputy General Counsel Ortiz. It is true that recovery against a municipality may be had where the failure to comply with statutory restrictions involves a mere irregularity or technical violation.[26] Recovery has been uniformly denied, however, where "the making of the contract flouted a firm public policy or violated a fundamental statutory restriction upon the powers of the municipality or its officers." [27]

■ The statutory requirement that the Commissioner of the Department must approve all contracts for the lease of Shea Stadium is not a mere technicality, but rather a fundamental statutory restriction. The power to approve or disapprove a municipal contract entails the power to dispose of public assets. Restrictions as to which city officials may invoke that power are not a mere formality, but are fundamental to "responsible municipal government." [28] Without such restrictions any city official, no matter his position, could dispose of public assets. Public accountability requires that restrictions on the persons authorized to enter into municipal contracts be rigidly enforced. The rule, of long

---

20. *Id.*

21. 3 *id.* § 531–1.0 (1978).

22. 40 N.Y.Jur. § 817 (1965).

23. "Those seeking to deal with a municipal corporation through its officials, must take great care to learn the nature and extent of their power and authority." *McDonald v. Mayor,* 68 N.Y. 23, 26 (1867); *see also* Restatement Second of Agency § 167 comment c (1958).

24. *Lindlots Realty Corp. v. Suffolk County,* 278 N.Y. 45, 15 N.E.2d 393 (1938); *McDonald v. Mayor,* 68 N.Y. 23 (1867); 40 N.Y.Jur. § 817 (1965).

25. *See McDonald v. Mayor,* 68 N.Y. 23, 26 (1867).

26. *See, e.g., Littlefield-Alger Signal Co. v. County of Nassau,* 43 Misc.2d 239, 250 N.Y.S.2d 730 (1964) (low bidder on municipal contract may recover under an implied contract theory where contract was not executed by County executive but bid was authorized by officials with authority and County had already made payments to bidder).

27. *Evans v. City of Johnstown,* 96 Misc.2d 755, 767, 410 N.Y.S.2d 199, 205 (*quoting Cassella v. City of Schenectady,* 281 A.D. 428, 432, 120 N.Y. S.2d 436, 440–41 (2d Dep't 1953)); *see also McDonald v. Mayor,* 68 N.Y. 23, 29 (1867).

28. *Cahn v. Town of Huntington,* 29 N.Y.2d 451, 455, 278 N.E.2d 908, 910, 328 N.Y.S.2d 672, 675 (1972).

standing, is stringent and rigorously exacting since it is designed to protect the public fisc and the public interest. Thus, as enunciated by Chief Judge Irving Lehman:

Where the Legislature provides that valid contracts may be made only by specified officers or boards and in specified manner, no implied contract to pay for benefits furnished by a person under an agreement which is invalid because it fails to comply with statutory restrictions and inhibitions can create an obligation or liability of the city. In similar case this court has given emphatic warning that equitable powers of the courts may not be invoked to sanction disregard of statutory safeguards and restrictions.[29]

For the foregoing reasons, the first cause of action is dismissed.

*Claim Against Mayor Koch*

Plaintiff's second cause of action alleges that the Mayor approved and ratified the alleged representations made by officers of the Department concerning the lease of Shea Stadium to the plaintiff. Defendants deny that Mayor Koch approved the alleged fee increase upon which plaintiff predicates its cause of action for breach of the oral agreement. Even assuming, as plaintiff alleges, that the Mayor did in fact ratify the representations, its second cause of action on its face does not state a claim against the Mayor on which relief can be granted. He cannot be held personally liable for the breach of a municipal contract which is invalid and unenforceable.

Entirely apart from the fact that the cause of action fails as a matter of law, defendant Koch is entitled to prevail on his motion for summary judgment. He and the other defendants deny that he approved the alleged fee increase which plaintiff alleges constituted the breach of the oral contract. To defeat a motion for summary judgment the opposing party must set forth "supporting arguments or facts in opposition to the motion."[30] Plaintiff has not done so. It has failed to produce any facts supporting its allegations that the Mayor was aware of and approved the alleged representations of the Department employees. Genesco does not respond to defendants' denial of the Mayor's knowledge or participation in the transaction, nor does it refer to the Mayor's role in the negotiations in their supporting affidavits. Moreover, by virtue of its failure to respond to defendants' statement pursuant to Local Rule 3(g), plaintiff must be deemed to have admitted the material facts set forth in defendants' 3(g) statement.[31] That document states that Mayor Koch never approved of any escalation of the proposed fee for the use of Shea Stadium and that plaintiff never met or talked with Mayor Koch. Because plaintiff has failed to produce any competent evidence showing a genuine issue of material fact, summary judgment is also appropriate as to this cause of action.

*The Deceptive Practices Claim*

Plaintiff's third cause of action against the municipal defendants (and Ticketron) alleges a violation of New York General Business Law, section 349 which prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service."[32]

The defendants contend that the section is part of a consumer fraud protection statute that is inapplicable to a complex transaction between a corporate plaintiff, here a concert promoter, and a municipal defendant for the rental of a municipal stadium.[33]

**29.** *Seif v. City of Long Beach,* 286 N.Y. 382, 387–88, 36 N.E.2d 630, 632 (1941).

**30.** *See Schering Corp. v. Home Insurance Co.,* 712 F.2d 4, 9 (2d Cir.1983) (*quoting SEC v. Research Automation Corp.,* 585 F.2d 31, 31 (2d Cir.1978).

**31.** Local Rule 3(g); *Foreman v. Ambach,* 525 F.Supp. 722, 724 (S.D.N.Y.1981).

**32.** N.Y.Gen.Bus.Law § 349(h) (McKinney Supp. 1983–84).

**33.** The Court notes that this claim against Ticketron is based on the facts alleged concerning

Plaintiff, noting that "any person" injured by a violation of the Act is authorized to bring an action to recover damages,[34] claims that a corporation[35] is a "person" within the express language of the statute and that if the Legislature intended to limit the right of action to "consumers," it would have done so expressly. Despite the absence of controlling New York precedent, this Court is persuaded that a New York court, based on the statute's legislative history, would grant defendants' motion for summary judgment.

Section 349 wears its purpose on its face; it is entitled "Consumer Protection From Deceptive Acts and Practices."[36] Prior to 1980, the Attorney General was the sole party who could enforce the prohibitions of section 349. "[R]ecognizing the need for private enforcement," however, the New York Legislature recently "granted individuals the right to sue for injuries resulting from consumer fraud."[37]

Section 349 is a powerful remedy for consumer fraud. Its broad language was intended to provide a "strong deterrent against deceptive business practices"[38] and to "increase the effectiveness of the consumer protection laws."[39] In keeping with these deterrent purposes, section 349 has been construed to allow recovery even in the absence of a showing of intent to deceive. Allegations of fraud are not required.[40]

No New York court has specifically addressed the question whether this consumer fraud statute applies to commercial transactions of the nature here at issue. The Court is, of course, mindful that it sits in diversity in deciding the summary judgment motion on this claim, and therefore must apply the law of New York.[41] While there is no single controlling New York decision here, the statute's legislative history combined with the New York courts' decisions governing construction of the Act persuade us that a New York court would grant defendants' motion for summary judgment.

Summary judgment is appropriate for two reasons. First, plaintiff has not been "injured by reason of any violation" of section 349 because the City's alleged misrepresentations do not constitute a "deceptive practice" within the meaning of the Act. Second, to extend this remedy to plaintiffs would alter completely the legal duties governing commercial relationships in New York. Absent a clear expression from the New York Legislature that it intended to effect so drastic a change in commercial law, this Court declines to interpret the statute to govern an alleged agreement to lease Shea Stadium.

Section 349(h) provides private parties with a cause of action for injuries "resulting from deceptive practices." The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising. The consumer oriented nature of the statute is evidenced by the remedies it provides. Section 349(h) provides parties with the oppor-

---

the transaction between Genesco and the City and not the facts alleged in Genesco's final and separate action for Ticketron's negligent handling of ticket sales.

**34.** N.Y.Gen.Bus.Law § 349(h) (McKinney Supp. 1983–84).

**35.** Although plaintiff initially characterized Genesco as an informal partnership, plaintiff's amended complaint states that Genesco is a subdivision of Lymutt Industries, a corporate entity.

**36.** N.Y.Gen.Bus.Law § 349(h) (McKinney Supp. 1983–84).

**37.** 1980 McKinney's Session Laws 1867 (Memorandum of Gov. Carey).

**38.** *Id.*

**39.** 1980 New York State Legislative Annual 146 (Memorandum of Assemblyman Harvey L. Strelzin).

**40.** *Allstate Insurance Co. v. Foschio,* 93 A.D.2d 328, 462 N.Y.S.2d 44, 47 (2d Dep't 1983); *People v. Colorado State Christian College,* 76 Misc.2d 50, 56, 346 N.Y.S.2d 482, 489 (1973).

**41.** *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

tunity to receive the greater of actual damages or $50.[42] The New York cases where plaintiffs have recovered under section 349(h) further reflect its consumer orientation since they uniformly involve transactions where the amount in controversy is small.[43] That the deceptive practices this statute seeks to combat involve recurring transactions of a consumer type is further supported by the origin of the statute. Section 349(h) is substantially modelled on the Federal Trade Commission Act.[44] Hence, in interpreting the phrase "deceptive practices," the New York courts have in large measure relied on the Federal Trade Commission Act's definition of such practices.[45] That Act only prohibits those deceptive practices which affect the public interest. Private transactions not of a recurring nature or without ramifications for the public at large are not a proper subject of Commission inquiry.[46]

The nature of the instant transaction clearly places it outside the purview of section 349 when that statute is construed in the light of the Federal Trade Commission Act. The rental of Shea Stadium is not an ordinary or recurring consumer transaction. It is in effect a "single shot transaction" involving complex arrangements, knowledgeable and experienced par-

ties and large sums of money. The nature of alleged deceptive government practices with respect to such a transaction are different in kind and degree from those that confront the average consumer who requires the protection of a statute against fraudulent practices. The only parties truly affected by the alleged misrepresentations in this case are the plaintiff and the defendants.[47] "A breach of a private contract affecting no one but the parties to the contract, whether that breach be negligent or intentional, is not an act or practice affecting the public interest."[48]

The Court is convinced that summary judgment is appropriate not only because plaintiff has not been "injured by reason of any violation" of section 349, but also because a contrary interpretation would radically alter commercial relations in the State of New York. As discussed above, section 349 provides a very broad remedy for consumer fraud. Because the purpose of the statute is "not to punish the wrongdoer but to protect the public," "proof of intention to deceive is not requisite to a finding of violation."[49] To apply section 349 to the present transaction, then, would mean that the essential requirements for fraud in commercial dealings would effectively be nullified.[50] This Court declines to interpret

**42.** N.Y.Gen.Bus.Law § 349(h) (McKinney Supp. 1983–84).

**43.** *See, e.g., Geismar v. Abraham & Strauss,* 109 Misc.2d 495, 439 N.Y.S.2d 1005 (1981) (action to recover $280 in connection with a sale of household dishes).

**44.** 15 U.S.C. § 45 (1982).

**45.** 76 Misc.2d 50, 53–57, 346 N.Y.S.2d 482, 486–89 (1973); *see also* N.Y.Gen.Bus.Law § 349(d) (exempting practices that comply with Federal Trade Commission guidelines).

**46.** *FTC v. Klesner,* 280 U.S. 19, 29, 50 S.Ct. 1, 4, 74 L.Ed. 138 (1929); *see also People v. Volkswagen of Am., Inc.,* 47 A.D.2d 868, 868, 366 N.Y.S.2d 157, 158 (1st Dep't 1975) ("[s]ections 349 and 350 of the General Business Law were enacted to safeguard the 'vast multitude which includes the ignorant, the unthinking and the credulous'".) (*quoting Floersheim v. Weinburger,* 346 F.Supp. 950, 957 (D.D.C.1972)).

**47.** Most other states have enacted deceptive practices statutes, many of which are modelled

on the Federal Trade Commission Act. Courts of those States have found that deceptive practices are only those affecting the public interest. *See, e.g., Zeeman v. Black,* 156 Ga.App. 82, 273 S.E.2d 910 (1980); *Lightfoot v. MacDonald,* 86 Wash.2d 331, 544 P.2d 88 (1976) (en banc) (deceptive practices statute does not encompass contractual dispute between client and attorney; plaintiff's complaint is merely that she and she alone suffered damage by reason of the defendant's failure to perform).

**48.** *Lightfoot v. MacDonald,* 86 Wash.2d 331, 544 P.2d 88, 90 (1976) (en banc).

**49.** *People v. Colorado State Christian College,* 76 Misc.2d 50, 56, 346 N.Y.S.2d 482, 489 (1973).

**50.** *See Gross-Haentjens v. Leckenby,* 38 Or.App. 313, 589 P.2d 1209 (consumer fraud statute providing private right of action for deceptive practices does not provide a new remedy for common law torts).

the statute's scope in a way which would lead to such a drastic change in basic tort law where the Legislature has not explicitly expressed its intent to effect such a change. Accordingly, this cause of action is dismissed for failure to state a claim.

*The Estoppel Claim*

■ Plaintiff's fourth cause of action against the municipal defendants and the Mayor alleges that by their acts and conduct they represented or conveyed the impression that a contract existed for Shea Stadium and that the plaintiff, to its detriment, relied upon such representations and conduct and expended various sums of money and incurred other obligations; consequently, that such acts and conduct created an estoppel in favor of the plaintiff. The thrust of plaintiff's argument is that Deputy Commissioner Levister, General Counsel Taylor, and Deputy General Counsel Ortiz represented to plaintiff that the City "would furnish the plaintiff with a duly executed contract," which it never provided.[51] While the New York courts, in cases involving exceptional circumstances, have at times applied an estoppel theory to a municipality,[52] estoppel is not available against a municipal corporation where the alleged representations exceed the municipal employee's authority.[53] The New York courts have uniformly declined to estop municipalities where the representations alleged to give rise to the estoppel were beyond the authority of the municipal employee in question.[54] "[E]stoppel may not be invoked to prevent a municipality from disclaiming the unauthorized or unlawful acts of its officers."[55] This doctrine is rigidly adhered to. As the New York Court of Appeals recently reiterated: "Municipal contracts which violate express statutory provisions are invalid.... [A] governmental subdivision cannot be held answerable for the unauthorized acts of its agents, we have frequently reiterated that estoppel is unavailable against a public agency."[56]

■ As the above disposition of plaintiff's breach of contract claim illustrates, none of the parties with whom plaintiff negotiated had the authority to provide assurances that a duly executed and approved written contract was forthcoming. Final approval, pursuant to the New York City Charter and the New York City Administrative Code, could only come from Commissioner Davis. If Deputy Commissioner Levister, General Counsel Taylor, or Deputy General Counsel Ortiz did in fact assure plaintiff that the Commissioner would approve and duly execute the contract, such representations were outside the scope of their authority and therefore cannot estop the City from denying the

---

51. Plaintiff's Memorandum of Law in Response to Municipal Defendants at 10.

52. *See, e.g., Bender v. New York City Health and Hosp. Corp.*, 38 N.Y.2d 662, 345 N.E.2d 561, 382 N.Y.S.2d 18 (1976) (defendant estopped from asserting an affirmative defense of failure to comply with notice of claim requirements where such requirements have been changed shortly before plaintiffs filed their actions, and defendants conducted examinations and other pretrial procedures for some time before informing plaintiff they had not complied with the new requirements).

53. *Wood v. Cordello*, 91 A.D.2d 1178, 459 N.Y.S.2d 150 (4th Dep't 1983); *Downey v. Lackawanna City School Dist.*, 51 A.D.2d 177, 379 N.Y.S.2d 557 (4th Dep't 1976); *Town of Guilderland v. Swanson*, 41 Misc.2d 398, 245 N.Y.S.2d 696 (1963), *modified*, 29 A.D.2d 717, 186 N.Y.S.2d 425 (3d Dep't 1968), *aff'd*, 24 N.Y.2d 872, 249 N.E.2d 467, 301 N.Y.S.2d 622 (1969).

54. It is true that courts have made an exception to this rule when a mere technicality is at stake. *See, e.g., Dour v. Village of Port Jefferson*, 89 Misc.2d 146, 150–51, 390 N.Y.S.2d 965, 968 (1976) (failure to provide purchase order does not render estoppel inapplicable where formal Board resolution undertaken and contract within the power of Board to authorize). As the Court notes with respect to plaintiff's breach of contract claim, however, this case does not present a mere technical failure to meet statutory requirements.

55. *La Porto v. Philmont*, 39 N.Y.2d 7, 12, 346 N.E.2d 503, 506, 382 N.Y.S.2d 703, 706 (1976).

56. *Granada Buildings, Inc. v. City of Kingston*, 58 N.Y.2d 705, 708, 444 N.E.2d 1325, 1326, 458 N.Y.S.2d 906, 907 (1982) (citations omitted).

existence of a valid contract. The Court grants the municipal defendants summary judgment on this claim.

■ Plaintiff also names the Mayor as a defendant in this cause of action. For the reasons given above with respect to plaintiff's breach of contract claim, summary judgment is granted. Plaintiff has failed to produce any facts supporting its allegations in this claim that the Mayor represented or authorized City officers to represent to plaintiff that a duly executed contract would be forthcoming. Conclusory allegations do not provide an adequate defense to a summary judgment motion.

### 42 U.S.C. section 1983 claim

Plaintiff's final cause of action against the municipal defendants is based on 42 U.S.C., section 1983. Plaintiff seeks compensatory and punitive [57] damages for an alleged deprivation of property without due process of law. Defendants contend that section 1983 does not extend to breach of contract claims and that plaintiff has failed to allege a property right secured by the Constitution or to show that a municipal policy, custom or practice caused it injury.[58] Plaintiff argues that it had a legitimate expectation that an oral contract with the City for the use of Shea Stadium would be approved by the Commissioner.

■ To recover under section 1983, plaintiff must establish a deprivation of a constitutionally protected right.[59] Property interests are not created by the Constitution but "are defined by existing rules or understandings [60] that stem from an independent source such as state law." [61] State law must provide plaintiff with a legitimate claim of entitlement and not simply a unilateral expectation of receiving the alleged "property." [62]

■ Plaintiff's alleged entitlement to the delivery of a duly executed contract does not rise to the level of a constitutionally protected property right. The Court's disposition of plaintiff's breach of contract and estoppel claims amply demonstrates that state law did not create a legitimate entitlement even if an oral contract was in fact made. New York law places the burden on plaintiff to ascertain the authority of those municipal officials with whom it deals. Having failed to satisfy that burden, plaintiff cannot claim a legitimate entitlement under state law to a "duly executed contract." [63] Unilateral or subjective expectations are insufficient to establish the constitutionally protected property interest necessary to establish a claim under section 1983.[64] Plaintiff's "action is, at bottom, a simple action for breach of contract for which the state provides a complete and

**57.** Although the parties have failed to raise this issue, plaintiff's claim for punitive damages is barred by the Supreme Court's decision in *City of Newport v. Fact Concerns, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1983) (municipality possesses absolute immunity from claims for punitive damages).

**58.** *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

**59.** *Parratt v. Taylor,* 451 U.S. 527, 528, 101 S.Ct. 1908, 1909, 68 L.Ed.2d 420 (1981).

**60.** While a mutually explicit understanding may support a claim of entitlement, *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972), mutual understandings and customs cannot create a property interest for purposes of due process when they are contrary to the express provisions of regulations and

statutes. *Baden v. Koch,* 638 F.2d 486 (2d Cir. 1980); *Stone v. Philbrook,* 528 F.2d 1084 (2d Cir.1975).

**61.** *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

**62.** *Id.*

**63.** *See Bleeker v. Dukakis,* 665 F.2d 401 (1st Cir.1981) ("at will" employment contract does not give rise to any legitimate entitlement to continued employment); *see also Packish v. McMurtrie,* 697 F.2d 23 (1st Cir.1983) (where statute grants town discretion to determine whether indemnification is appropriate indemnification does not give rise to legitimate entitlement).

**64.** *See Grimes v. Eastern Ill. Univ.,* 710 F.2d 386 (7th Cir.1983).

adequate remedy." [65] Having failed to successfully pursue that remedy, plaintiff cannot now claim a constitutional deprivation. To allow breach of contract claims to be pursued under section 1983 would truly open the flood gates of litigation. Summary judgment on this final claim against the municipal defendants is therefore appropriate.

### Claim against Ticketron for Negligence in Handling Ticket Sales

Plaintiff's final claim charges Ticketron with the negligent handling of ticket sales to the plaintiff's proposed country and western concert. Plaintiff entered into a written contract with Ticketron for the sale of tickets prior to the time the City cancelled the plaintiff's proposed concert. Plaintiff alleges that Ticketron was negligent in failing to place tickets on sale at the agreed upon time; giving prospective purchasers incorrect information about the date of the concert, the price and availability of tickets; and failing to properly monitor ticket sales or coordinate efforts to sell tickets. As a result, plaintiff alleges the municipal defendants received inaccurate information about the level of ticket sales and consequently cancelled the concert. Plaintiff claims consequential damage due to Ticketron's alleged negligence. Ticketron argues that summary judgment is appropriate because several provisions of the contract plaintiff signed disclaim liability for the very type of negligence plaintiff alleges, or for any incidental or consequential damages. Additionally, Ticketron contends that it is entitled to prevail on this motion because plaintiff admits it never received a use permit from the City, which constitutes a breach of contract, relieving Ticketron of any obligation under their contract.

Plaintiff seeks to avoid the limitation of liability clauses and the clause requiring plaintiff to comply with the City's use permit laws by a claim, based upon an affidavit of Gene Richards, a Genesco principal, that the Ticketron contract did not include the printed matter that forms the basis of Ticketron's affirmative defense. Richards swears that he signed only the first page of a three-page document that Ticketron contends is the contract entered into, and that the second and third pages which contain the limitation of liability clauses were neither attached to nor referred to in the one page which plaintiff signed and which it contends is the contract.

Plaintiff's claim is rendered suspect by the fact that the one page Richards admits he signed refers several times to sections that are contained only in the second and third pages of the contract relied upon by Ticketron, so that it seems unlikely that the contract consists of the cover page. Nevertheless, the Richards affidavit raises a material issue of fact concerning the content of the contract between Genesco and Ticketron. While the Court perforce is required to deny the motion for summary judgment, it is not inappropriate to remind counsel of Rule 11 of the Federal Rules of Civil Procedure.

The Ticketron motion for summary judgment is denied.

---

**65.** *Casey v. DePetrillo,* 697 F.2d 22, 23 (2d Cir. 1983); *see Bleeker v. Dukakis,* 665 F.2d 401 (1st Cir.1981); *see also Parratt v. Taylor,* 451 U.S.

527, 543, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981).