■ AEROMAR C. POR A., Doing Business as AEROMAR AIRLINES, et al., Appellants, v PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Respondent. (Matter No. 1.) PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Respondent, v AEROMAR AIRLINES C. POR A., Doing Business as AEROMAR AIRLINES, Appellant. (Matter No. 2.)—In consolidated matters (1) to compel the Port Authority to execute and deliver a written lease of certain premises at John F. Kennedy International Airport,

or, in the alternative, to recover damages for alleged fraud, and (2) to evict Aeromar Airlines from the premises in question, Aeromar Airlines and Agro Air Associates appeal from so much of an order and judgment (one paper) of the Supreme Court, Queens County (Graci, J.), dated February 18, 1988, as dismissed their complaint in matter No.1 and granted the Port Authority's petition in matter No. 2, awarding it possession of the premises at issue.

Ordered that the order and judgment is affirmed insofar as appealed from, with costs.

On or about November 1, 1983, Aeromar Airlines, a Dominican air cargo carrier (hereinafter Aeromar), entered into a contract with Aer Lingus to sublease portions of the space that the latter leased from the Port Authority in Building 82 at John F. Kennedy International Airport. Under the terms of the sublease, Aeromar was to pay Aer Lingus $8,548.33 a month in rent, and the sublease was to terminate with the prime lease. By letter dated May 30, 1984, Aer Lingus advised the Port Authority that it would not renew the prime lease upon its expiration on September 30, 1984. Thereafter, the Port Authority allowed Aeromar to remain on the premises on a month-to-month basis, paying $2,300 per month in rent. However, on October 29, 1985, the Port Authority served a "Notice to Terminate Tenancy from Month to Month" on Aeromar, to be effective November 30, 1985.

When Aeromar failed to vacate the premises by November 30, 1985, the Port Authority commenced a proceeding against it in the Civil Court, Queens County, on or about December 3, 1985, seeking to repossess the premises. Aeromar responded by serving on the Port Authority a summons seeking a judgment in the Supreme Court, Queens County, declaring that it was entitled to a lease for the building in question. According to its complaint, served on or about December 24, 1985, Aeromar alleged that certain Port Authority employees had promised airline representatives at various meetings that it would give Aeromar a prime lease for a minimum of two years, with a two-year renewal option, in Building 82 or in comparable space; and that, relying on these representations, Aeromar had spent considerable sums of money to improve the premises and to install "hush kits" on its airplanes. The two matters were consolidated on April 4, 1986. Following a subsequent order granting the plaintiffs leave to amend their caption, an amended complaint was served on September 22, 1987, in response to which the Port Authority served an answer on September 28, 1987. On or about October 1, 1987,

however, the Port Authority served a second verified answer to the amended complaint, for the first time raising the Statute of Frauds as an affirmative defense.

On or about August 17, 1987, the Port Authority moved for summary judgment, and its motion was granted by order and judgment (one paper) dated February 18, 1988. In its memorandum decision, the court found that the plaintiffs' expenditures on the premises and their agreements to obtain "hush kits" were not "unequivocally referable" to the Port Authority's alleged oral promise to grant them a lease, and that the doctrine of promissory estoppel did not apply because the plaintiffs had suffered no "unconscionable injury".

On appeal, the plaintiffs contend that the Port Authority waived the defense of the Statute of Frauds by not raising it in its first answer or by timely moving to dismiss the complaint on that ground; that in any case, there were issues of fact as to their "part performance" precluding the granting of summary judgment; and that Port Authority is estopped from asserting the defense of the Statute of Frauds. The plaintiffs further allege that the Port Authority employees they dealt with had apparent authority to act, so that the agency should be bound by their promises. The plaintiffs' contentions are without merit.

In his Practice Commentary to CPLR 3025 (d) Professor David D. Siegel states:

"Whenever an amended pleading is served, whether as of course under subdivision (a) of CPLR 3025 or by leave under subdivision (b), and it is one which would have required a responsive pleading if originally used, the amended one requires a responsive pleading. An amended complaint will thus require a fresh answer * * *.

"The same is true of a 'supplemental' pleading served by leave under subdivision (b). If it is such as would originally have required a responsive pleading, it will require one now" (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3025:21, at 490).

Thus, when the defendant served its second verified answer "as of right" under CPLR 3025 (a), within 20 days of plaintiffs' service of its amended verified complaint, it timely interposed the affirmative defense of the Statute of Frauds.

Where a party's acts are not clearly referable to an alleged oral agreement to lease, summary judgment is properly granted (*Geraci v Jenrette*, 41 NY2d 660). In the instant case, the plaintiffs' repairs to the premises were necessary to enable

them to conduct business there during the period of their sublease and month-to-month tenancy, as well as to "improve the surroundings" in which they worked *(Onorato v Lupoli,* 135 AD2d 693). In addition, FAA regulations required installation of hush kits on Stage One aircraft to meet nationwide noise abatement standards by December 31, 1985, so that the plaintiffs' purchase of these devices cannot be construed as "unequivocally referable" to their purported reliance upon the Port Authority's oral promise to grant them a prime lease. In any event, their alleged "haste" in obtaining hush kits in order to comply with an earlier noise abatement deadline is not supported by the record, since on the one hand they claim to have begun investigating the availability of these devices some 9 to 12 months before the Port Authority allegedly offered them a lease, and on the other, no hush kits had been installed on any of their aircraft as of April 7, 1986.

The plaintiffs have further failed to demonstrate the "unconscionable injury" necessary to invoke the doctrine of promissory estoppel *(D & N Boening v Kirsch Beverages,* 99 AD2d 522, *affd* 63 NY2d 449). Their investments in hush kits are necessary if they wish to fly their aircraft anywhere in the United States; they have now been in possession of the disputed premises without a lease for approximately four years, so that they have effectively had their minimum two-year lease with a two-year renewal option; and their expenditures on the premises were conceded by their general counsel to have been kept to a minimum.

Finally, it is well settled that those seeking to deal with government employees "must take great care to learn the nature and extent of their power and authority" *(McDonald v Mayor,* 68 NY 23, 27; *Brookhaven Hous. Coalition v Solomon,* 583 F2d 584, 591). The officials to be consulted and the procedures to be followed in the obtaining of leases are designated in the compact between New York and New Jersey creating the Port Authority (McKinney's Uncons Laws of NY § 6401 *et seq.),* as well as in various bylaws, instructions and delegations kept on file in the office of the secretary of the Port Authority. "It is established law in [New York] that where there is a lack of authority on the part of agents of a [governmental] corporation to create a liability, except by compliance with well-established regulations, no liability can result unless the prescribed procedure is complied with and followed" *(Lutzken v City of Rochester,* 7 AD2d 498, 501; *Genesco Entertainment v Koch,* 593 F Supp 743, 748).

In the instant case, the officials with whom the plaintiffs

were negotiating had neither the apparent or actual authority to bind the Port Authority. Mollen, P. J., Bracken, Sullivan and Harwood, JJ., concur.