OPINION OF THE COURT
Harold L. Galloway, J.
The defendant’s motion pursuant to CPLR 3211 (a) (7) for an order dismissing plaintiffs’ complaint for failure to state a cause of action is denied.
*638 The issue presented on this motion is whether the deceptive practices alleged herein by plaintiffs against defendant are actionable under section 349 of the General Business Law. The defendant contends that the statute affords relief only to "consumers” (i.e., end-users of goods or services); and that plaintiffs — as middlepersons in a marketing chain retailing defendant’s products to the end-user consumers — cannot be deemed "consumers”. Defendant argues that plaintiffs purchased defendant’s cosmetic products for the purpose of resale to consumers; and as such they are entrepreneurs engaged in business pursuits and, therefore, not protected by consumer-protection legislation such as General Business Law § 349. In support of its argument defendant relies heavily upon Federal cases such as Azby Brokerage v Allstate Ins. Co. (681 F Supp 1084 [SD NY 1988]), Morris v Gilbert (649 F Supp 1491 [ED NY 1986]), Nardella v Braff (621 F Supp 1170 [SD NY 1985]) and Genesco Entertainment v Koch (593 F Supp 743 [SD NY 1984]).
The statute (General Business Law § 349 [a]) as applicable here provides in effect that "[deceptive acts or practices [by WeCare] in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.” This language is very broad and contains several disjunctives.
The "business, trade or commerce” of WeCare involves not only the manufacture and sale of cosmetic products but also, significantly, the recruitment of distributors for the sale of those products. Like some other cosmetic manufacturers, defendant sells its products through independent distributors rather than through employees or retail outlets. The manner and tactics used to recruit its distributors are the focus of this action. Defendant’s recruitment involves continuous, recurring solicitations aimed at the public-at-large. Defendant regularly solicits and receives moneys from large numbers of individuals as a necessary prerequisite to the granting of its distributorships. Moreover, the persons solicited for distributorships are not necessarily sophisticated; rather they are members of the general public who need no special skills, training, education, etc., in order to qualify. Accordingly, if (as plaintiffs allege) the defendant is engaging in deceptive acts or practices in the recruitment process and thereby financially injuring a significant percentage of its numerous recruits, then such recruit *639 ment practices would entail ramifications for the public-at-large. (Cf., Azby Brokerage v Allstate Ins. Co., supra; Genesco Entertainment v Koch, supra.) Moreover, the defendant’s sales, marketing and recruitment practices (unlike the securities business) are not subject to extensive regulation by other governmental agencies. (Cf., Morris v Gilbert, supra.) These several factors basically distinguish this case from the cited Federal cases such as to render those cases inapposite here. The Federal cases involved either a nonrecurring practice, sophisticated business persons or a business otherwise heavily regulated by other governmental agencies.
Moreover, defendant’s argument that plaintiffs are not consumers is without merit. In an effort to make this point, the defendant has attempted to divert the focus of plaintiffs’ action away from the recruitment aspect by emphasizing instead the product-sale aspect of its business. Although plaintiffs may not necessarily be end-users of the product they are indeed end-users of the distributorships, which they bought and paid for. They do not resell their distributorships, although their distributorships do entitle them to recruit new distributors. The recruits, however, do not pay purchase money to plaintiffs; nor do they buy out the plaintiffs’ distributorships. Rather the recruit pays money to WeCare for a new, distinct distributorship. Therefore, even adopting arguendo the defendant’s narrow definition of "consumer”, plaintiffs still qualify. Furthermore, many of the plaintiff class members allegedly end up with large amounts of the product that, never get sold, thereby making them the de facto end-users of the product as well.
Also, defendant’s attempted comparisons of its sales of distributorships to the sale of fast-food franchises, to which it thinks General Business Law § 349 should not apply, is unconvincing. Such fast-food franchises cost many thousands of dollars and require relatively sophisticated investors who would normally seek legal and accounting advice before acting, as opposed to WeCare distributors who allegedly buy (or charge) several hundred dollars worth of merchandise at a WeCare recruitment meeting. While there may be similarities between buying a fast-food franchise and paying for a WeCare distributorship, the differences significantly outweigh them.
Finally, the statute in any event should be interpreted, not *640 narrowly, but broadly and in a manner such as to effectuate its specified purpose of protecting the public against deceptive business practices. In view the language and purpose of this legislation, plaintiffs are included within the class of persons sought to be protected by the statute and should be allowed to use it as a basis for seeking redress.