■ New York Public Interest Research Group, Inc., et al., Appellants, v Insurance Information Institute, Respondent.—Order of the Supreme Court, New York County (Kristin Booth Glen, J.), entered on October 12, 1988, which granted defendant's motion to dismiss the complaint against it, is unanimously affirmed, without costs or disbursements.

Plaintiff New York Public Interest Research Group, Inc., a public interest and consumer advocacy organization, and the three individual plaintiffs, who are alleged to be plaintiffs in personal injury actions, have commenced the instant litigation against defendant Insurance Information Institute, which is basically a mouthpiece for the insurance industry, and Mechlin D. Moore, its president. The predicate for this lawsuit is a series of 1986 paid advertisements in magazines and on television in which the Insurance Information Institute expressed its views concerning the supposedly dire social and financial costs attendant upon the explosion of civil lawsuits and escalating jury awards. In their complaint, plaintiffs urge that defendant's editorial campaign was false, misleading and deceptive and, therefore, in violation of General Business Law § 349 (a) and § 350. Section 349 (a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state" whereas section 350 proscribes "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state".

Defendant moved to dismiss the complaint, contending that (1) the statutes in question do not relate to the situation herein, (2) its advertisements constitute free speech protected by the First Amendment of the US Constitution, and (3) plaintiffs lack the standing to bring this action. The Supreme Court rejected defendant's arguments with respect to the applicability of sections 349 (a) and 350 of the General Business Law and plaintiffs' standing but agreed that the subject advertisements were constitutionally protected since they were not principally intended as a "proposal of a commercial transaction between the defendant (or its constituent insur-

ance companies) and the viewers or readers of the ads, and because their primary purpose is to influence a variety of public debates (whether or not truthfully)" (140 Misc 2d 920, 936). In that connection, it should be noted that regardless of whether or not plaintiffs possess the requisite standing to sue defendant, the fact remains that, notwithstanding the Supreme Court's determination to the contrary, sections 349 (a) and 350 are inapplicable to defendant's advertisements, which in any event, involve the sort of free speech guaranteed by the First Amendment.

An examination of the language and history of General Business Law §§ 349 and 350 clearly demonstrates that they are consumer protection statutes that were never intended to encompass the type of editorial comment at issue herein and, indeed, could not constitutionally do so. Thus, the Governor's approval memorandum for the 1980 amendments to these provisions adding a private right of action stated that "[b]oth sections 349 and 350 of the General Business Law protect the consumer against fraudulent business practices" and are directed at "injuries resulting from consumer fraud" (1980 McKinney's Sessions Laws of NY, at 1867; *see also, Genesco Entertainment v Koch,* 593 F Supp 743, 751 [SD NY 1984], wherein the court stated that "[s]ection 349 wears its purpose on its face; it is entitled 'Consumer Protection From Deceptive Acts and Practices' "). As consumer protection laws, sections 349 and 350 prohibit, and have only been applied to, frauds or other deceptive practices arising out of commercial transactions *(see, Genesco Entertainment v Koch, supra)* and not to general expressions of opinion about public matters. This is the case even where the views expressed are in support of a specific profit-making corporation or industry, such as the insurance business, so long as the advertisements are not aimed at promoting particular products or services. Moreover, to construe sections 349 and 350 otherwise would be to render them contrary to the First Amendment, and it is axiomatic that, whenever possible, a statute will be given an interpretation which avoids constitutional infirmity *(People v Epton,* 19 NY2d 496, *mot to amend remittitur granted* 19 NY2d 1017, *cert denied* 390 US 29; *Rector of St. Bartholomew's Church v Committee to Preserve St. Bartholomew's Church,* 84 AD2d 309, *appeal dismissed* 56 NY2d 645).

The Supreme Court, however, correctly found that defendant's advertisements were not commercial speech and were, accordingly, due the full protection of the First Amendment. While purely commercial speech, although entitled to certain

constitutional safeguards, can be subject to scrutiny under false advertising and deceptive practices statutes *(Virginia Pharmacy Bd. v Virginia Consumer Counsel,* 425 US 748), the critical factor in determining if particular speech may be regulated or barred by government is whether it proposes a commercial transaction *(Zauderer v Office of Disciplinary Counsel,* 471 US 626; *Bolger v Youngs Drug Prods. Corp.,* 463 US 60). Further, speech is not necessarily commercial simply because it is economically motivated or reflects the interest of a commercial enterprise or even if it is paid for by a profit-making entity *(see, Board of Trustees v Fox,* 492 US 469, 106 L Ed 2d 388; *Consolidated Edison Co. v Public Serv. Commn.,* 447 US 530; *First Natl. Bank v Bellotti,* 435 US 765; *Virginia Pharmacy Bd. v Virginia Consumer Council, supra).* Applying the standard established by the United States Supreme Court to the circumstances before us, it is evident that defendant's speech is constitutionally protected. As aptly noted by the Supreme Court, the subject advertisements do not propose a commercial transaction since they are not specifically directed at potential purchasers of the advertiser's product; instead, they address issues of malpractice, product and liability insurance costs. To the extent that defendant's purpose was to influence public officials, voters and citizens in general in order to increase sympathy for the concerns of the insurance industry, defendant was engaged in precisely the sort of free debate which the First Amendment was intended to safeguard. Consequently, defendant's motion to dismiss the complaint against it was properly granted. Concur—Sullivan, J. P., Milonas, Rosenberger and Smith, JJ.