**MODERN AMUSEMENTS, INC., Plaintiff,**

v.

**MARRIOTT CORPORATION and The County of Westchester, Defendants.**

**No. 84 Civ. 3479 (EW).**

United States District Court, S.D. New York.

Jan. 2, 1985.

Katz, Kleinbaum, Farber & Karson, White Plains, N.Y., for plaintiff; Eugene I. Farber, White Plains, N.Y., of counsel.

Scheffler, Karlinsky & Stein, New York City, for defendant Marriott Corp.; Robert P. Stein, New York City, of counsel.

County of Westchester, White Plains, N.Y., for defendant Westchester County; Henry J. Logan, Gregory F. Meehan, White Plains, N.Y., of counsel.

OPINION

EDWARD WEINFELD, District Judge.

This is in effect a three-way litigation. Plaintiff, Modern Amusements, Inc. ("Modern"), commenced this action against the defendants, The County of Westchester ("County"), and Marriott Corporation ("Marriott"), to recover a balance of $30,-000 claimed to be due under a written lease

agreement entered into for the use of an amusement ride called "Himalaya" at Rye Playland Amusement Park ("Playland"), Rye, New York, owned by the County. The lease was for each of the three year operating seasons, 1982, 1983, and 1984, at a rental of $55,000 per season ("the Lease").[1] It was executed by Marriott "as Managing Agent for the County of Westchester" and contained an express representation by Marriott that it "is authorized to enter into this Lease on behalf of the County of Westchester as the County's managing agent for the operation of Rye Playland."

Modern asserts separate claims against the County and Marriott. It seeks to hold the County liable as principal under the Lease. Alternatively, in the event it is determined that Marriott did not have the legal authority to enter into the Lease on behalf of the County, plaintiff seeks to hold Marriott liable for the unpaid rental for breach of its representation that it did have such authority.

The County resists plaintiff's claim against it upon the ground that the Lease was void *ab initio* for noncompliance with applicable statutory requirements for municipal contracts, and in the event it is held liable to Modern, the County cross-claims against Marriott for the amount it is cast in liability to Modern. Marriott denies liability to Modern upon the ground that it was acting for a disclosed principal—the County, and in the event this defense is rejected and it is found liable to plaintiff, it asserts a cross-claim for indemnification against the County.

Marriott and the County each move to dismiss Modern's respective claim against it pursuant to Rule 12(b)(6), Fed.R.Civ.P. for failure to state a claim, or alternatively, for summary judgment pursuant to Rule 56. Each makes the same motions against each other's cross-claim. Modern in turn moves for summary judgment against each defendant and to dismiss their defenses.

Each litigant has filed a statement as required by Local Rule 3(g). In view of the submission of affidavits in support of and in opposition to the respective motions, the parties, upon argument of these motions, acknowledged they are ripe for disposition under the summary judgment rule.

I

### THE FACTUAL BACKGROUND

On or about January 1, 1981, the County and Marriott entered into an "Interim Management and Consulting Agreement (the "Management Agreement") whereby Marriott was to manage and operate Playland for a term of two years ending December 31, 1982. The parties contemplated a long-term arrangement but this was never consummated.

On April 23, 1982 the Lease between Modern as lessor and the County as lessee was executed by Marriott, as already noted, as the "Managing Agent" for the County. Prior thereto, on or about March 17, 1982, Michael B. Lichtenstein, house counsel for Marriott, conferred with Richard Pitassy ("Pitassy"), the Chief Deputy Attorney of the County[2] and discussed the proposed Lease and the fact that the term thereof was for three operating seasons, i.e., 1982, 1983, and 1984, which would extend beyond December 31, 1982, the termination date of the Management Agreement. Pitassy gave his approval and authorized Marriott to execute the Lease. Thereafter a fully executed copy of the Lease was sent to and retained by Pitassy on behalf of the County.

Although the Management Agreement by its terms was effective as of January 1, 1981, it was not formally executed until April 28, 1981. Previously, the County had advised Marriott that contracts had to be entered into promptly so that the concessionaires would have the necessary lead time to prepare their concessions for the

---

1. Plaintiff alleges that in an attempt to mitigate damages it leased to a third party the Himalaya for the 1984 season and received a rental of $25,000 thereby reducing the amount due under the lease agreement to $30,000.

2. Also discussed with Pitassy was another proposed lease with Continental Park Attractions, Inc.

scheduled opening of Playland on May 9, 1981. Thus, by telex on April 9, 1981, prior to the formal execution of the Management Agreement on April 28, 1981, the County authorized Marriott "to enter into concession agreements with concessionaires for the 1981 Playland season" and pursuant to such authorization Marriott executed a substantial number of such agreements as "Managing Agent for the County of Westchester."

In June 1982, a group of concessionaires commenced an action in the Supreme Court of the State of New York, Westchester County, against Marriott and the County ("the Fragola" action) to enjoin them from removing the concessionaires and their equipment from Playland. The action centered about a dispute as to the terms of the concessions for the 1982 season. When the concessionaires applied for a preliminary injunction, Brian J. Powers, an Assistant Westchester County Attorney, submitted an affirmation in opposition to the motion and annexed thereto two exhibits, one, a copy of one of the 1981 concessionaire agreements with the County which had been executed by Marriott as "Managing Agent for the County of Westchester" and the other, a proposed agreement for the 1982 season to be executed by Marriott in the same manner. Also submitted in opposition to the motion for a preliminary injunction in the Fragola action was an affidavit of a Marriott Vice President and General Manager of Playland who swore that pursuant to the Management Agreement, Marriott was "empowered to enter into contractual agreements on behalf of the County of Westchester ..." Since Marriott and the County as defendants joined forces in opposition to the Fragola motion for injunctive relief, there can be no issue that the County's attorneys were fully aware of that statement.

At the end of 1982, as previously noted, the Management Agreement between Marriott and the County terminated. Thereafter the County took over the operation of Playland as of January 1, 1983. On March 17, 1983 the County and Modern entered

into a modification agreement of the Lease under which the Himalaya ride was delivered by Modern on May 4, 1983 rather than on April 1, 1983 and $5,000 was deducted from the first monthly rent installment due on June 1, 1983. The modification agreement provides: "[a]ll other terms and conditions of the Lease agreement shall remain the same." [3] The County paid and Modern accepted the Lease payments for the use of the Himalaya for the 1983 season. Modern also received payments due for the year 1982 and all payments were made with the knowledge and consent of the County. On December 9, 1983, the County informed Modern that it would not lease the Himalaya during the 1984 season citing "the questionable validity of the April 23, 1982 Lease with the Marriott Corporation," as well as other reasons.

## II

### DISCUSSION

In reliance upon the foregoing undisputed factual array, Marriott contends that: (1) it was authorized to enter into the Lease; (2) even if it did not have express authority, it had implied authority; (3) that the County by the various acts of its officials affirmed, ratified, and recognized Marriott's authority to enter into the Lease, accepted its benefits and by reason thereof, the County is equitably estopped from challenging its validity.

The County responds that the Management Agreement did not expressly authorize Marriott to enter into a lease with Modern. Marriott first points to a provision of the Management Agreement which authorizes it to "[s]olicit proposals and negotiate leases, concessions, and other agreements" for Playland. However, authority to "solicit" and "negotiate" leases does not constitute a grant of authority to commit the County and to execute on its behalf a three season lease which extends beyond the expiration date of the Management Agreement.

---

**3.** Local Rule 3(g) Statement of Modern at Par. 5.

Marriott makes a further argument based upon another clause of the Management Agreement which provides that "Marriott shall perform all the duties normally associated with sound management and provide all services as are customary and usual to such an operation [Playland], including, but not limited to," as noted above, "soliciting" and "negotiating" leases. Thus, Marriott urges that in the performance of its duties "normally associated with sound management," County officials engaged in a course of conduct which if it did not establish "express" authority, substantiates its claim of implied authority to enter into the Lease.

Neither this, nor Marriott's initial attempt to glean actual authority from the terms of the contract, however, meet the County's principal contention upon this motion that the acts or omissions of individual County employees cannot serve to create implied authority to enter into the Lease, since it was void *ab initio* for want of compliance with Westchester County law. In sum, the County contends that the acts, statements and conduct of its attorneys and other officials relative to the Lease cannot grant to Marriott authority absent compliance with the requirements of the statute.

To sustain its position, the County relies principally upon Section 161.11 of the Westchester County Charter which provides that, with exceptions not here applicable, all contracts entered into by the County require the approval of the Board of Acquisition and Contract.[4] This section does not authorize agreements to be executed by or on behalf of the County by a managing or operating agent designated pursuant to an agreement such as that at issue in this action. Moreover, Marriott does not dispute that the County's Board of Acquisition and Contract did not authorize Marriott to enter into the Lease with Modern on behalf of the County. The fact that it did authorize the underlying agreement between Marriott and the County for management services cannot extend to authorization of the Lease.

Thus, Marriott's essential claim to relief rests upon a contention that various acts of County officials constituted acceptance, approval and ratification of the Lease and that the County's receipt of its benefits estop it from asserting its invalidity. Were this a litigation among private entities the Court would have no hesitancy in holding that the conduct and course of action of the County's attorneys and officials bars the County from asserting the invalidity of the contract.[5] The factors which enter into such a determination differ from those which come into play when a political entity, or municipality, or other governmental agency is involved and whose powers to enter into contracts are restricted and defined by statute. The statutory restrictions upon the powers of officials to commit municipalities or other political entities to contractual obligations are intended to protect the public against wasteful, exorbitant and even corrupt action and other evils and excesses in municipal government. Under such circumstances, private interests must yield to the greater community interests.

[I]t is better that an individual should occasionally suffer from the mistakes of public officers or agents, than to adopt a rule which, through improper combina-

---

4. Westchester County Charter sec. 161.11 (Gen'l Code Publisher's Corp.1979); *see also id.* sec. 104.11(5)(c) ("Leases of the property of others for County purposes for terms not exceeding five (5) years may be made by and with the approval of the Board of Acquisition and Contracts without action by the Board of Legislators"); Westchester County Administrative Code sec. 249.131 (Gen'l Publisher's Corp.1979) ("the Commissioner shall have the right and authority, subject to the approval of the Board of Ac-

quisition and Contract … to grant to any person … concessions in … any park or parks under his jurisdiction").

The County additionally urges the invalidity of the contract for failure to comply with an appropriation provision. In view of the Court's holding, it is unnecessary to reach this issue.

5. *See, e.g., Rothschild v. Title Guarantee & Trust Co.,* 204 N.Y. 458, 464, 97 N.E. 879, 881 (1912);

tions or collusion, might be turned to the detriment and injury of the public.[6]

As this Court noted recently in a case involving the City of New York:

> The statutory requirement that [a designated commission] must approve all contracts ... is not a mere technicality, but rather a fundamental statutory restriction. The power to approve or disapprove a municipal contract entails the power to dispose of public assets. Restrictions as to which city officials may invoke that power are not a mere formality, but are fundamental to "responsible municipal government." Without such restrictions any city official, no matter his position, could dispose of public assets. Public accountability requires that restrictions on the persons authorized to enter into municipal contracts be rigidly enforced. The rule, of long standing, is stringent and rigorously exacting since it is designed to protect the public fisc and the public interest.[7]

Whether a moral obligation on the part of the County exists by reason of the acts and conduct of its officials is not the issue. The issue is whether upon the undisputed facts a legal obligation exists in favor of Modern that can be enforced against the County.

■ The Court is persuaded that the County is beyond the reach of liability under the Lease and cannot be held liable thereon under any theory advanced by Marriott. New York courts have rigidly enforced statutory restrictions governing the authority of officials to commit municipalities to contractual obligations. Thus, over one hundred years ago, the New York State Court of Appeals, in *Peterson v. Mayor of New York*, while recognizing that a corporation can be bound by implied contracts to be deduced from the acts and conduct of its officers, nonetheless held:

> no sort of ratification can make good an act without the scope of the corporate

authority. So where the charter or a statute binding upon the corporation, has committed a class of acts to particular officers or agents, other than the general governing body, or where it has prescribed certain formalities as conditions to the performance of any description of corporate business, the proper functionaries must act, and the designated forms must be observed, and generally no act of recognition can supply a defect in these respects.[8]

Accordingly, the fact that officials at the County Attorneys' office approved or acquiesced in the continuation of the Lease, or that the Commissioner for Parks and Recreation entered into a modification of the Lease with Modern does not overcome the statutory restriction so as to cast the County in liability. Marriott has provided no evidence upon this motion to indicate that any of these officials were authorized initially to approve the contract under the applicable Westchester statute.[9]

Similarly, the fact that the County may have received benefits under contract does not estop the County from challenging its validity nor does it create an implied contract to pay for the benefits received. Thus, as if in direct answer to Marriott's various contentions here advanced, Chief Judge Lehman writing for a unanimous Court of Appeals, emphasized the continued rigid enforcement of legislative restraints upon officials with respect to contracts as follows:

> Mere acceptance of benefits by the city under a contract made without authority does not estop a municipal corporation from challenging the validity of the contract and from denying liability for materials furnished or services rendered under a contract not made or ratified by a board or officer acting under authority conferred by law and in the manner prescribed by law. Where the Legislature

---

Bisbing v. Sterling Precision Corp., 34 A.D.2d 427, 312 N.Y.S.2d 305, 309–10 (3d Dep't 1970).

**6.** *Potts v. City of Utica,* 86 F.2d 616, 619 (2d Cir.1936) (quoting *Whiteside v. United States,* 93 U.S. (3 Otto) 247, 257, 23 L.Ed. 882 (1876)).

**7.** *Genesco Entertainment, Inc. v. Koch,* 593 F.Supp. 743, 749 (S.D.N.Y.1984).

**8.** 17 N.Y. 449, 454 (1858).

**9.** *Cf. Potts v. City of Utica,* 86 F.2d 616, 619 (2d Cir.1936).

provides that valid contracts may be made only by specified officers or boards and in specified manner, no implied contract to pay for benefits furnished by a person under an agreement which is invalid because it fails to comply with statutory restrictions and inhibitions can create an obligation or liability of the city. In similar case this court has given emphatic warning that equitable powers of the courts may not be invoked to sanction disregard of statutory safeguards and restrictions.[10]

■ Accordingly, the Court holds that the contract entered into by Marriott with Modern is void insofar as Marriott purported to act as authorized agent for the County. Marriott in making the representation that it had authority to execute the Lease on behalf of the County did so at its own risk. It was charged with knowledge of the public law that applied to contracts of the nature here at issue.[11] Moreover, in this instance, it can be charged with actual knowledge since the Management Agreement to which it was a signatory was approved by both the Westchester County Board of Legislators and the Board of Acquisition and Contract.

The County is entitled to judgment dismissing Modern's claim against it and dismissing Marriott's cross-claim against it. Modern is entitled to judgment against Marriott in the sum of $30,000, damages sustained by reason of breach of its representation that it was an authorized agent of the County to enter into the Lease.[12]

■ The Lease contains a provision that in the event any action is brought in relation to the Lease the prevailing party, shall, in addition to all other sums to which it may be entitled, recover from the unsuccessful party its reasonable attorneys' fees. Marriott argues it is not liable for the fees

because it executed the Lease as agent for the County, a disclosed principal—a claim rejected above. Under the circumstances, its denial of liability for the payment of fees, specifically provided for under the Lease, is without substance. It is liable to Modern for all damages sustained by reason of breach of its representation. Had the County been held as principal it would have been obligated under the Lease to pay the fees as stipulated under the Lease.

Modern has submitted an affidavit by its attorney setting forth the details of services rendered by him and an associate in the prosecution of this action and evaluates the fair and reasonable value thereof at $7,695 representing 39½ hours for services rendered by the principal attorney at the rate of $150 per hour and 14¾ hours for services rendered by his associate at the rate of $100 per hour. Reimbursement is also claimed for expenses in the sum of $295.

Marriott challenges the amount so requested as grossly excessive and much beyond the fair and reasonable value of services necessarily required in asserting and advancing Modern's claims. This contention is based upon Marriott's position that the various claims and issues involved necessitated that Marriott expend far greater effort than that required by plaintiff since Marriott was not only resisting Modern's claim against it but seeking indemnification from the County and based upon its own legal charges, it contends that Modern's request is excessive.

The Court, applying its own experience, is of the view that fair and reasonable compensation for the fair and reasonable value of the services necessarily required in prosecuting Modern's claims is the sum of $6,000, plus disbursements in the sum of $295.[13]

**10.** *Seif v. City of Long Beach,* 286 N.Y. 382, 387, 36 N.E.2d 630 (1941); *see Lutzken v. City of Rochester,* 7 A.D.2d 498, 501, 184 N.Y.S.2d 483, 487 (4th Dep't 1959).

**11.** *See Potts v. City of Utica,* 86 F.2d 616, 619 (2d Cir.1936); *Genesco Entertainment, Inc. v. Koch,* 593 F.Supp. 743, 749 & nn. 23–25 (S.D.N.Y. 1984).

**12.** *See Wittenberg v. Robinov,* 9 N.Y.2d 261, 173 N.E.2d 868, 213 N.Y.S.2d 430 (1961); 3 N.Y. Jur.2d secs. 282, 289 at 111 (1980).

**13.** *See Boe v. Colello,* 447 F.Supp. 607, 610 (S.D. N.Y.1978); *Blank v. Talley Indus., Inc.,* 390 F.Supp. 1, 4 (S.D.N.Y.1975).

Judgment may be entered accordingly. So ordered.