**WESTCHESTER LEGAL SERVICES, INC. and Gerald A. Norlander, Plaintiffs,**

v.

**COUNTY OF WESTCHESTER, Andrew P. O'Rourke, Individually and In His Official Capacity as County Executive of the County of Westchester, New York and the Board of Acquisition and Contract of Westchester County, Defendants.**

No. 85 Civ. 3115 (SWK).

United States District Court,
S.D. New York.

May 3, 1985.

Cravath, Swaine & Moore, Richard L. Hoffman, Ellen T. Lowenthal, New York City, for plaintiffs.

Westchester County Law Dept., Henry J. Logan, Peter A. Meisels, County Attys., White Plains, N.Y., for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

The instant case is before the Court on plaintiffs' motion for a preliminary injunction. The plaintiffs in this action are Westchester Legal Services, Inc. ("Welserv") and Gerald A. Norlander ("Norlander"). Welserv is a non-profit legal services corporation which provides free legal services in civil matters to indigent persons. Welserv

is authorized to practice law pursuant to Section 495(7) of the New York State Judiciary Law. Norlander is the Executive Director of Welserv. The defendants are the County of Westchester ("the County"), Andrew P. O'Rourke ("O'Rourke"), and the Westchester County Board of Acquisition and Contract ("the Board"). The County is a New York State municipal corporation. O'Rourke is the County Executive for the County. He is sued in his individual and official capacities. The Board is the entity which must approve all contracts to which the County is a party. Subject-matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1343(a), and 42 U.S.C. § 1983. There is also a pendent, breach of contract, state law claim.

The complaint alleges that the defendants, in violation of 42 U.S.C. § 1983, have deprived plaintiffs of their rights secured by the First and Fourteenth Amendments to the United States Constitution. The complaint also alleges that the defendants breached a valid contract with the plaintiffs. The instant action arises from the defendants' decision to terminate some of the funding for Welserv as a result of the latter's representation of persons suing the County and its various agencies.

In 1984 Welserv had a budget of approximately one million dollars ($1,000,000) and handled approximately 1,600 cases. Approximately 15% of Welserv's 1984 budget came from funds provided by the County. These funds appear to have been provided pursuant to two separate grants or contracts; one for $105,000 and the other for $50,000. Only the latter is the subject of the current dispute.

The County receives Community Development Block Grants ("CDBG") from the Department of Housing and Urban Development. These grants are made pursuant to a three-year funding plan. The most recent three-year plan began in 1982. The CDBG three-year plan for funds to the County for the fiscal years 1982, 1983 and 1984 included annual allocations for Welserv. Welserv's annual allocations were provided for Welserv to represent eligible clients in housing and shelter-related disputes. Welserv was to receive $60,000 in the first two years, and $50,000 in the current fiscal year, which began in October of 1984. *See* Exhibit A annexed to Plaintiffs' Complaint. Welserv received its allocated funds during the 1982 and 1983 fiscal years. The instant dispute revolves around the $50,000 contract for the current fiscal year and the three-year funding plan which is being drafted to cover the 1985, 1986 and 1987 fiscal years.

On April 1, 1985, Lawrence C. Salley, a Deputy Commissioner for the County, mailed a letter to Norlander which stated:

Dear Mr. Norlander:

The above mentioned contract which expired on March 21, 1985 between the Westchester Legal Services Inc. and the County of Westchester will not be renewed for the fiscal year 1984 Community Development Program Year.

*See* Exhibit D annexed to Plaintiffs' Complaint.

This was a rather curious development, to say the least, since Norlander had received from the County on March 15, 1985 three copies of a contract granting Welserv $50,000, for the period from October 19, 1984 through October 18, 1985 (the 1984 fiscal year), to represent eligible persons. *See* Exhibit B to Plaintiffs' Complaint. Moreover, on April 29, 1985 Norlander received a document which contains the preliminary allocation of funds for the CDBG three-year funding plan for 1985 through 1987. This document indicates that Welserv will receive no funds during this three-year period.

The record before this Court indicates that Welserv has represented several clients in lawsuits against the instant defendants, apparently with a fair degree of success. It is this conduct by Welserv which the plaintiffs contend led to the termination of funding for Welserv. The parties have submitted various affidavits and memoranda of law to the Court. Oral argument was held and the parties agreed that there was no need to hold·an evidentia-

ry hearing; they were content to rely upon their submissions.

The record before the Court is replete with uncontradicted statements by O'Rourke that Welserv's funding was terminated because it had sued the County and its agencies. O'Rourke contends that groups which receive funds from the County should not be permitted to sue the County. The defendants have produced no evidence to cast doubt upon this contention.

In view of the imminent threat to Welserv from defendants' action, and because attempts to resolve the dispute were unsuccessful, plaintiffs filed the instant action and then moved for a preliminary injunction pursuant to Fed.R.Civ.P. 65. The Court finds that plaintiffs have proceeded expeditiously in seeking the instant relief.

*Discussion*

In order to obtain a preliminary injunction in this Circuit a plaintiff must meet the following standard:

> Preliminary injunctive relief in this Circuit calls for a showing of "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."

*Jack Kahn Music Co. v. Baldwin Piano & Organ Co.*, 604 F.2d 755, 758 (2d Cir.1979). *See also Power Test Petroleum Distributors, Inc. v. Calcu Gas, Inc.*, 754 F.2d 91, 95 (2d Cir.1985).

Plaintiffs, to obtain a preliminary injunction, need not show that there is a likelihood of success on the merits of all of their claims for relief. Rather, they must show a likelihood of success on the merits of at least one of their claims. Plaintiffs allege three claims or causes of action in the complaint. They allege that defendants, in violation of 42 U.S.C. § 1983, deprived plaintiffs of rights guaranteed to them by the First and Fourteenth Amendments to the United States Constitution. Plaintiffs also allege that, in violation of 42 U.S.C. § 1983, defendants have deprived them of a property interest protected by due process rights guaranteed by the Fourteenth Amendment to the United States Constitution. Finally, plaintiffs contend that defendants breached a valid contract. The Court expresses no view at this time as to plaintiffs' breach of contract claim. Based upon a review of the record as it currently stands, the Court concludes that plaintiffs have shown a likelihood of success on their first two causes of action.

Freedom of expression and association are two of the most fundamental and deeply cherished liberties protected by the First Amendment. It is the Fourteenth Amendment which makes the First Amendment applicable to the States. The plaintiffs contend that the defendants' acts, if not enjoined, will severely inhibit the exercise of plaintiffs' First Amendment rights and will punish plaintiffs for previously exercising those rights.

■ The Court has little trouble accepting plaintiffs' contention that the type of activity in which Welserv engages and to which the defendants object—litigation on behalf of indigent clients to secure their legal rights—falls directly within the protection of the First Amendment. The First Amendment "protects the right of associations to engage in advocacy on behalf of their members." *Smith v. Arkansas State Highway Employees*, 441 U.S. 463, 464, 99 S.Ct. 1826, 1827, 60 L.Ed.2d 360 (1979) (citations omitted). Moreover, Welserv "engages in litigation as a vehicle for effective political expression and association, as well as a means of communicating useful information to the public." *In Re Primus*, 436 U.S. 412, 431, 98 S.Ct. 1893, 1904, 56 L.Ed.2d 417 (1978) (citations omitted). Because Welserv's actions are protected by the guarantees of the First Amendment "[t]he government is prohibited from infringing upon these guarantees either by a general prohibition against certain forms of advocacy, or by imposing sanctions for the expression of particular views it opposes." *Smith, supra,* 441 U.S. at 464, 99 S.Ct. at 1827 (citations omitted). The

Court, therefore, concludes that the activities in which Welserv engages on behalf of indigent clients with funds utilized from the County are activities clearly protected by the First Amendment.[1] *Smith, id.; In Re Primus, supra,* 436 U.S. at 426, 431–432, 98 S.Ct. at 1901, 1904–1905; *United Transportation Union v. State Bar of Michigan,* 401 U.S. 576, 580–581, 585, 91 S.Ct. 1076, 1079–80, 1082, 28 L.Ed.2d 339 (1971); *N.A.A.C.P. v. Button,* 371 U.S.·415, 428–431, 83 S.Ct. 328, 335–337, 9 L.Ed.2d 405 (1963); *In Re Halkin,* 598 F.2d 176, 187 (D.C.Cir.1979); *Northern Penna Legal Services, Inc. v. County of Lackawana,* 513 F.Supp. 678, 684 (M.D.Pa.1981).

■ This conclusion does not end the Court's inquiry, however. First, the Court notes that the existence of a protected right under the First Amendment does not in any way depend upon the existence of a protectible property interest. The Supreme Court has stated:

> Doyle's claim under the First and Fourteenth Amendments are not defeated by the fact that he did not have tenure. Even though he could have been discharged for no reason whatever, and had no constitutional right to a hearing prior to the decision not to rehire him, he may nonetheless establish a claim to reinstatement if the decision not to rehire him was made by reason of his exercise of constitutionally protected First Amendment freedoms.

*Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 283–284, 97 S.Ct. 568, 574–575, 50 L.Ed.2d 471 (1977) (citations omitted). This is precisely the situation which the Court is confronted with in the instant case.

·Having made this point, the Court will now address the framework within which plaintiffs' First Amendment claim must be considered. *Doyle, supra,* articulates the standard by which such a claim is to be evaluated. The standard is as follows: ·

> Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was a "substantial factor"—or to put it in other words, that it was a "motivating factor" in the Board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct.

*Doyle, supra,* at 287, 97 S.Ct. at 576 (footnote omitted).

■ In the instant case plaintiffs have overwhelmingly demonstrated that Welserv's conduct was constitutionally protected and that this conduct was a "substantial factor" and a "motivating factor" in the County's decision to terminate the $50,000 contract. Moreover, defendants have not only failed to make the requisite showing by a preponderance of the evidence, but have failed to produce *any* evidence which would indicate that the County would have reached the same decision in the absence of Welserv's protected conduct.[2]

---

1. Welserv may properly assert the First Amendment rights implicated in the instant case. *N.A. A.C.P. v. Button, infra,* 371 U.S. at 428, 83 S.Ct. at 335. "We think petitioner [the N.A.A.C.P.] may assert this right on its own behalf, because, though a corporation, it is directly engaged in those activities claimed to be constitutionally protected...." *Id.*

2. The Court does not accept the defendants' contention that they have a genuine concern and question as to whether it is ethical for a group which receives funding from a government entity to engage in litigation against that source of funding. This is the reason O'Rourke advances for seeking the advice of the local Bar Association. The Court notes, first, that there is no serious ethical question regarding Welserv's conduct and the County funding it receives. *See Washington v. Seattle School District No. 1,* 458 U.S. 457, 102 S.Ct. 3187, 3204 n. 31, 73 L.Ed.2d 896 (1982); *Shadis v. Beal,* 685 F.2d 824, 832–833 (3d Cir.), *cert. denied,* 459 U.S. 970, 103 S.Ct. 300, 74 L.Ed.2d 282 (1982); *Dennis v. Chang,* 611 F.2d 1302, 1306–1307 (9th Cir.1980). Secondly, if defendants are truly concerned about a conflict of interest or some other ethical consideration, they may file an appropriate motion to disqualify Welserv in cases where Welserv sues the County.

In view of the foregoing, the Court concludes that plaintiffs have demonstrated a likelihood of success on the merits as to their First Amendment claim with respect to the $50,000—1984 fiscal year contract. *See Northern Penna Legal Services, Inc.,* *supra,* at 684–685. And, as the Supreme Court has stated:

> "Inasmuch as this case involves First Amendment rights of association which must be carefully guarded against infringement by public office holders, we judge that injunctive relief is clearly appropriate in these cases." [*Burns v. Elrod*] 509 F.2d [1133] at 1136 [7th Cir. 1975]. *We agree.*

*Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976) (emphasis added).

■ Before discussing the issue of irreparable harm, the Court will address the issue of plaintiffs' second cause of action. Plaintiffs, as their second cause of action in the complaint, allege that the 1984 fiscal year $50,000 contract was a protectible property interest which was terminated in violation of due process rights protected by the Fourteenth Amendment. The Supreme Court has stated:

> The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests—property interests—may take many forms.

*Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972). The Court further stated:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Id.* at 577, 92 S.Ct. at 2709.

The Court has no question, based on the record before it, that Welserv has a legitimate claim of entitlement to the 1984 fiscal year $50,000 contract.[3]

The Court, having concluded that the plaintiffs have shown a likelihood of success in arguing that they had a protectible property interest which implicated due process rights, must next consider whether defendants' termination of this interest was "arbitrary, capricious, or without a rational basis." *Northern Penna Legal Services, Inc., supra,* 513 F.Supp., at 683 (citations omitted).

■ The Court reaches the same conclusion it reached earlier: defendants have failed to produce any evidence which refutes plaintiffs' contention that the contract was terminated in retaliation for Welserv's representation of indigent clients in suits against the County and its agencies.[4] "The Constitution does not permit a governmental body to punish attorneys simply because they decide to represent particular clients. The authorities may not deter individuals from seeking relief in court through threats or other punitive actions." *Northern Penna Legal Services, Inc.,* at 683 (citation omitted). Thus, the Court concludes that plaintiffs have also demonstrated a likelihood of success on the merits of their second claim, which rests upon their due process rights guaranteed by the Fourteenth Amendment. *Id.* at 682–684.

■ The Court also concludes, in the alternative, based on the foregoing discussion, that with respect to plaintiffs' two constitutional claims for relief (brought pursuant to 42 U.S.C. § 1983), they have presented sufficiently serious questions going to the merits to make them a fair ground for litigation and that a balance of hardships tipping decidedly in plaintiffs' favor exists. Of course, plaintiffs need only show *either* the likelihood of success on the merits or the existence of a sufficiently serious question.

---

**3.** This is so even if there is no valid, enforceable contract under state law. The Court expresses no view on this issue at this time. For this reason, defendants' reliance on *Modern Amusements, Inc. v. Marriott Corp.,* 599 F.Supp. 1548 (S.D.N.Y.1984), is misplaced.

**4.** *See* Footnote 2.

■ The Court next must consider the existence of irreparable harm. The Court is satisfied, based on the record before it, that plaintiffs have sufficiently demonstrated the existence of irreparable harm to them from the defendants' actions. Welserv receives a substantial amount of money from the County. The funds in question finance particular activities of Welserv: the $50,000 is provided specifically to represent indigent clients in housing and shelter-related cases. The termination of the $50,000 contract could very well curtail or destroy altogether the rendering of services by Welserv to clients with housing or shelter-related problems. Moreover, a violation of plaintiffs' constitutional rights, and in particular, a violation of First Amendment rights, constitutes irreparable harm, *per se. Northern Penna Legal Services, Inc.,* 513 F.Supp., at 685.

■ In view of this, the plaintiffs have met their burden with respect to obtaining a preliminary injunction. Before discussing the particular terms of the injunction, however, the Court wishes to express its concurrence with and adoption of the views expressed by the Court in *Northern Penna Legal Services, Inc., supra,* wherein that Court stated:

> Finally, there is the matter of the public interest. Again, the court must emphasize that the evidence presented at the hearing requires that, for the purposes of this action, it be concluded that the repudiation was in retaliation for the initiation of certain lawsuits. There certainly is no public interest in such deterrence. Indeed, the latter consideration favors entry of an injunction. This action will have two salutary effects: (1) prevention of several potential violations of the United States Constitution and (2) guarantee that the flow of legal assistance to the poor will not be interrupted for improper reasons …

> The federal judiciary is naturally reluctant to interfere in the affairs of local government. The present case, however, presents a special situation. Review of the record conclusively demonstrates

that a preliminary injunction is proper. As previously explained, the defendants have not contradicted substantial evidence to the effect that the termination would be unconstitutional. The theories proffered by the plaintiffs, moreover, are neither attenuated nor exotic. Rather, they have considerable support in the authorities rendered by the United States Supreme Court and other respected tribunals. In short, the instant suit is one of those rare instances in which a federal district court must, and shall, enjoin an action of local officials.

*Id.* at 685–686. This Court is also reluctant to enjoin the action of local officials, but the Court is presented with a suit where it must enter such an injunction.

### Conclusion

■ The Court will enter a preliminary injunction against the defendants with respect to the 1984 fiscal year $50,000 contract. However, the injunction the Court is going to enter shall apply only with respect to the termination of this contract and not with respect to the three-year funding plan for the period from 1985 until 1987. Thus far all that has occurred with respect to this plan is a preliminary allocation. At some point in the future, when a decision is reached or additional action is taken with respect to this plan, the plaintiffs may move for appropriate preliminary or permanent injunctive relief. At this point, however, they have not carried their burden to obtain a preliminary injunction with respect to the three-year funding plan involving the fiscal years 1985, 1986 and 1987.

Accordingly, it is hereby ORDERED that the defendants in the above-captioned action and their officers, agents, employees, servants and all persons acting by or under their authority, direction and control and/or who are in active concert or participation with them, are preliminarily enjoined from doing the following:

(1) violating the rights and privileges granted to plaintiffs under the First and Fourteenth Amendments to the Constitution of the United States and to represent clients in litigation against the

County of Westchester without fear of reprisal, as discussed in the instant opinion;

(2) terminating or failing to renew the contract between the County of Westchester and Welserv for the third year (the 1984 fiscal year) of the current grant program;

(3) granting to any other person or organization the $50,000 that was allocated to Welserv pursuant to the 1984–1985 year (the 1984 fiscal year) of the Urban County Community Development Block grant.

It is further

ORDERED that the defendant O'Rourke and the defendant Board of Acquisition and Contract are to approve, execute and deliver promptly to Westchester Legal Services, Inc. a renewal contract for $50,000 for the Westchester Legal Services' Urban County Program.

SO ORDERED.